**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SIEMENS TRANSFORMADORES S.A. de C.V.,** | ) | |
| **Plaintiff,** | ) | **No. 10 C 3750** |
| **v.** | ) | **Judge Joan H. Lefkow** |
| **SOO LINE RAILROAD COMPANY, d/b/a CANADIAN PACIFIC RAILWAY,** | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Siemens Transformadores S.A. de C.V. ("Siemens"), a manufacturer of power transformers, filed suit against Soo Line Railway Company, which does business as Canadian Pacific Railway ("Canadian Pacific"), seeking to recover damages to a transformer that Canadian Pacific carried between Eagle Pass, Texas and Ayr, Ontario. Siemens's suit is brought under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706 ("Carmack Amendment"), which permits a shipper to recover damages or loss from a carrier in certain circumstances. Siemens has moved for partial summary judgment on the issue of whether Canadian Pacific can assert the affirmative defense of a limitation of liability. For the reasons that follow, the motion [#23] will be granted.[1]

[1] This court has subject matter jurisdiction under 49 U.S.C. § 11706(d)(1) and 28 U.S.C. §§ 1331, 1332, and 1337(a). Venue is proper under 49 U.S.C. § 11706(d)(2)(A)(iii).

## BACKGROUND[2]

Siemens is a Mexican corporation that manufactures and sells electrical power transformers. Canadian Pacific is a Minnesota corporation that provides transportation services on its rail lines.

In late 2007 or early 2008, Siemens manufactured transformer TP 765 at its Guanajuato, Mexico facility for a customer located in Ontario, Canada. Siemens contracted with Ferrocarril Mexicano, S.A. de C.V. ("Ferromex") to transport the transformer from Guanajuato to Piedras Negras, Mexico. Transportation from Guanajuato to Piedras Negras was performed under a bill of lading billed by and paid to Ferromex. Siemens also contracted with Fracht FWO, Inc. ("Fracht"), a freight forwarding company, to arrange transport from Eagle Pass, Texas (across the border from Piedras Negras) to the customer in Ontario. Fracht contracted with Canadian Pacific's subsidiary, Canadian Pacific Logistics Solutions ("CPLS"), to arrange for transportation from Eagle Pass to Ayr, Ontario. CPLS contracted with the BNSF Railway Company for transportation from Eagle Pass to Chicago, and then arranged for transportation from Chicago to Ontario using Canadian Pacific's line.

The parties have not submitted Siemens's contracts with Fracht. An email from Sven Braum at Fracht to Ricardo Zarate at Siemens that pertains to the shipment of a different transformer (TP 764) contains the following notice at the bottom:

> Important Notice:
> All services provided hereunder are subject to the Terms and Conditions of Service of the National Customers Broker and Forwarders Association of America Inc., available at www.frachtusa.com <http://www.frachtusa.com/>

---

[2] The facts set forth in this section are derived from the statements of fact and supporting documents submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Canadian Pacific, the non-movant.

> Liability of Fracht FWO Inc. may be limited in accordance with said terms.

(Def.'s Ex. D at ST0084.) The terms and conditions of service that are available on Fracht's website provide the following limitation on liability:

> **Declaring Higher Value to Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

(Def.'s Ex. E ¶ 7.) Siemens did not request that Fracht negotiate full liability terms in connection with the shipment of transformer TP 765.

On February 11, 2008, CPLS sent a letter to Fracht regarding the details of the shipment from Eagle Pass to Ontario. The letter includes the following disclaimer of liability:

> For transportation of goods within Canada, Canadian Pacific Railway's liability for claims involving any alleged loss, damage, or delay to the goods, and the procedures for processing such claims, shall be the same as that specified in the Railway Traffic Liability Regulations, SOR 91/488 (as amended), except that Shipper and Canadian Pacific Railway agree that:
>
> . . .
>
> c.) CPLS/CPR shall not be liable for loss or damage to goods which exceed the lesser of:
> 1. Actual value of lost or damaged goods (after salvage)
> 2. $50,000 per carload shipment – CPR lines only

(Pl.'s Ex. G.) Siemens concedes, for the purposes of the instant motion, that there were oral communications between Siemens and Canadian Pacific whereby Siemens either agreed to waive its right to declare the value of its cargo or declared the value of its cargo.

On February 12, 2008, a bill of lading was issued that reflects the transformer's transport from Eagle Pass to Ayr, Ontario.[3] (Pl.'s Ex. F.) The bill of lading identifies CPLS as the shipper. The bill of lading does not contain any limitation on liability for damages. Under "Special Handling" instructions, the bill of lading provides, "Do not hump."[4]

Siemens's complaint alleges that Canadian Pacific delivered the transformer on March 17, 2008 in substantially damaged condition and that Siemens incurred $420,271.67 in repair costs. The complaint further alleges that the damages occurred because of several abnormal impacts outside Chicago, including on February 14, 22, and 27, 2008.

**SUMMARY JUDGMENT STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Id*. While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265

---

[3] A bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of the carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co.* v. *Kirby*, 543 U.S. 14, 18–19, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004).

[4] "Humping" is a method of sorting freight cars in the marshaling yard. Cars are pushed over a raised track, known as a hump, and then they travel downhill over switching points to a berth. *Encyclopaedia Britannica Online*, "railroad," http://www.britannica.com/EBchecked/topic/489715/railroad (last accessed Mar. 2, 2012).

(1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id*. at 323. In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id*. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

**DISCUSSION**

Under the Carmack Amendment, a rail carrier that transports goods is liable for the "actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 11706(a). The purpose of the Carmack Amendment is to "relieve cargo owners 'of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *Kawasaki Kisen Kaisha Ltd.* v. *Regal-Beloit Corp.*, — U.S. —, 130 S. Ct. 2433, 2441, 177 L. Ed. 2d 424 (2010) (quoting *Reider* v. *Thompson*, 339 U.S. 113, 119, 70 S. Ct. 499, 94 L. Ed. 698 (1950)). A rail carrier may limit its liability by establishing rates for transportation that limit liability to "a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier." *Id.* § 11706(c)(3)(A). In order to take advantage of a limited liability agreement, however, the carrier must demonstrate that it gave the shipper a reasonable opportunity to choose full Carmack liability protection and that it obtained the shipper's agreement as to its choice of liability. *Tokio Marine & Fire Ins. Co.* v. *Amato Motors, Inc.*, 996 F.2d 874, 879 (7th Cir. 1993); *Co-Operative Shippers, Inc.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 840 F.2d 447, 451 (7th Cir. 1988); *Sompo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*, 540 F. Supp. 2d 486, 493–94 (S.D.N.Y. 2008) (Chin, J.). Siemens seeks

partial summary judgment on the sole issue of whether the facts are sufficient to support Canadian Pacific's assertion of the affirmative defense of limited liability.

## I. Whether the Carmack Amendment Applies to the Shipment of Transformer TP 765

As a threshold issue, Canadian Pacific argues that the Carmack Amendment does not apply to its transport of transformer TP 765 because the shipment originated outside the United States. In *Kawasaki*, the Supreme Court held that the Carmack Amendment does not apply to a shipment originating overseas under a single through bill of lading. 130 S. Ct. at 2442. The Court noted, however, that Carmack does apply where the bill of lading for foreign transport ends in the United States and the cargo owners then contract to complete a new journey with a United States origin. *Id.* at 2445 (discussing *Reider,* 339 U.S. at 117). Here, the transformer was shipped under two separate bills of lading: one covering transportation within Mexico (from Guanajuato to Piedras Negras), and another covering transportation from Eagle Pass, Texas to Ontario.[5] It is undisputed that the bill of lading for transport within Mexico was distinct from the bill of lading for transport from Eagle Pass to Ontario. Under these circumstances, the Carmack Amendment applies to the shipment from Eagle Pass to Ontario. *See Kawasaki*, 130 S. Ct. at 2445; *Reider*, 339 U.S. at 117. Canadian Pacific rightly does not contest that it may be liable for damages caused to a shipment that originated in the United States for export to Canada. *See* 49 U.S.C. § 11706(a)(3) (Carmack Amendment applies to transport of cargo "from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading"); *Kawasaki*, 130 S. Ct. at 2444 ("Today's decision need not address the instance where

[5] Neither party explains how the transformer was transported from Piedras Negras across the border to Eagle Pass.

goods are received at a point in the United States for export.”). Accordingly, the Carmack Amendment applies to Canadian Pacific’s transportation of the transformer.[6]

## II. Whether Canadian Pacific Has Waived The Affirmative Defense

Siemens first argues that Canadian Pacific waived its right to assert a liability limitation as an affirmative defense because it failed to plead the defense when it filed its answer to the complaint. *See* Fed. R. Civ. P. 8(c). This is an odd argument for Siemens to make, given the procedural posture of this case. The purpose of the rule requiring a defendant to plead affirmative defenses in its answer “is to avoid surprise and undue prejudice to the plaintiff by providing . . . notice and the opportunity to demonstrate why the defense should not prevail.” *Venters* v. *City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). Here, where Siemens has itself raised the issue of Canadian Railway’s affirmative defense, it can hardly claim to have been “ambush[ed]” by an unexpected argument. *Cf. id.* at 968. Moreover, courts have recognized that when the parties argue an affirmative defense before the district court, “technical failure to plead the defense is not fatal.” *Dresser Indus., Inc.* v. *Pyrrhus AG*, 936 F.2d 921, 928 (7th Cir. 1991) (quoting *De Valk Lincoln Mercury, Inc.* v. *Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987)). Finally, if the court were to deny Siemens’s motion for summary judgment, then it would be within its discretion to allow Canadian Pacific to file an amended answer asserting the

[6] Canadian Pacific also argues that (1) Siemens has not established a *prima facie* case under the Carmack Amendment because it has not demonstrated that the transformer arrived at Eagle Pass in good condition, and (2) the transformer is a “miscellaneous” commodity exempt from the Carmack Amendment under 49 C.F.R. § 1039.11. With respect to the first argument, the merits of Siemens’s claim under the Carmack Amendment are not at issue. In deciding this summary judgment motion, the court only considers whether the amendment applies and whether Canadian Pacific may assert an affirmative defense of a liability limitation. Canadian Pacific’s second argument is without merit; power transformers are explicitly excepted from the “miscellaneous commodities” exemption. *See* 49 C.F.R. § 1039.11(a).

defense. *See* Fed. R. Civ. P. 15(a). For these reasons, Canadian Pacific is not precluded from asserting the affirmative defense because of waiver.

### III. Whether Canadian Pacific May Assert the Affirmative Defense of a Limitation of Liability

In order for Canadian Pacific to assert an affirmative defense of a limitation of liability, it must show that it gave Siemens or Siemens's intermediaries a reasonable opportunity to choose full Carmack liability protection. *See Tokio Marine*, 996 F.2d at 879; *Co-Operative Shippers*, 840 F.2d at 451; *Sompo Japan*, 540 F. Supp. 2d at 493–94.[7] Canadian Pacific does not argue the June 11, 2008 letter from CPLS to Fracht provided the required notice, nor could it. Nothing in the letter indicates that Fracht or Siemens had a choice between full and limited liability. Nor does Canadian Pacific argue that discovery will show that it provided the required disclosures directly to Siemens through any oral communications.

Rather, Canadian Pacific argues that Siemens was given the opportunity to choose between full Carmack protection and limited liability by virtue of its agreement with Fracht. In making this argument, Canadian Pacific highlights the portion of Fracht's terms and conditions

---

[7] Siemens suggests that Canadian Pacific could not satisfy Carmack unless it gave notice directly to Siemens, the shipper of goods. That is incorrect. In *Norfolk Southern Railway Company* v. *Kirby*, 543 U.S. 14, 33, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004), the Supreme Court held that "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." The underlying principle is that carriers must be able to assume that the intermediary can negotiate for limited liability so as to avoid the burden of investigating all upstream contracts. *Id.* Although *Kirby* was a maritime case, it derived its holding from *Great Northern Railway Company* v. *O'Connor*, 232 U.S. 508, 34 S. Ct. 380, 58 L. Ed. 703 (1914), a non-maritime case involving transportation by rail. *Kirby* is therefore applicable to cases brought against carriers under the Carmack Amendment. *See Werner Enters., Inc.* v. *Westwind Maritime Int'l*, 554 F.3d 1319, 1324–26 (11th Cir. 2009); *accord Nipponkoa Ins. Co., Ltd.* v. *Atlas Van Lines, Inc.*, No. 09-168, 2011 WL 3739373, at *2 (S.D. Ind. Aug. 23, 2011); *see also Tokio Marine*, 996 F.2d at 879 n.11 ("We note that courts have enforced agreements limiting liability between a carrier and the shipper's agent."). Applying this rule, Siemens is bound by any limitation on liability agreed by Fracht and CPLS.

that sets forth the requirements for declaring a higher value of goods to third parties. Any agreement between Fracht and Siemens cannot relieve Canadian Pacific of its obligations under the Carmack Amendment, however. The Eleventh Circuit's decision in *Werner Enterprises, Inc.* v. *Westwind Maritime International, Inc.*, 554 F.3d 1319 (11th Cir. 2009), is instructive.[8] In that case, the shipper contracted with an intermediary whose invoices used exactly the same third party liability language that appears in Fracht's terms and conditions. *See id.* at 1322. The intermediary then entered into an agreement with a second intermediary, which in turn contracted with the trucking company that transported the shipper's goods. *Id.* The broker transportation agreement between the second intermediary and the trucking company contained a liability limitation that specifically referenced the Carmack Amendment. *Id.* After the goods were stolen en route, the shipper's insurer sought recovery for the full amount of the goods from the trucking company. The Eleventh Circuit held that the trucking company could assert an affirmative defense under the Carmack Amendment. Its analysis focused solely on the terms of the broker transportation agreement entered into by the second intermediary and the trucking company. *Id.* at 1327–28. Here, as in *Werner*, the court's analysis must focus on any agreements between Canadian Pacific and Siemens or Canadian Pacific and Siemens's intermediaries. Given that neither of these agreements provided the shipper with a reasonable opportunity to choose full Carmack liability protection, the notice of third party liability

---

[8] *Werner* considered a claim brought under the portion of the Carmack Amendment relating to motor carriers and freight forwarders, 49 U.S.C. § 14706. The general liability scheme established for motor carriers is similar to the liability scheme for rail carriers. *Compare* 49 U.S.C. § 14706(a), *with* 49 U.S.C. § 11706(a). Motor carriers, like rail carriers, are required to demonstrate that they gave the shipper a reasonable opportunity to choose between two or more levels of liability in order to assert an affirmative defense of a liability limitation. *See Opp* v. *Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000). Therefore *Werner* provides persuasive authority in this case.

limitation in the agreement between Fracht and Siemens is irrelevant. Siemens's motion for partial summary judgment must be granted.

**CONCLUSION AND ORDER**

For the foregoing reasons, Siemens's motion for partial summary judgment [#23] is granted. This case is set for a status hearing on 3/15/2012 at 8:30 a.m.

Dated: March 7, 2012 Enter: Joan H. Lefkow

JOAN HUMPHREY LEFKOW
United States District Judge